## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Bryce Montoya, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I have been employed as a Special Agent with the FBI since May 2018. I am currently assigned to the FBI Boston Child Exploitation and Human Trafficking Task Force, where I investigate Violent Crimes Against Children ("VCAC"). While employed by the FBI, I have investigated federal criminal violations related to, among other things, the online sexual exploitation of children. As a Special Agent with the FBI, I have conducted numerous investigations into the production, attempted production, distribution, receipt, and possession of child pornography, to include executing federal search warrants and criminal complaints. Additionally, prior to my assignment on the Child Exploitation and Human Trafficking Task Force, I was assigned to the Boston Division Lakeville Resident Agency, where I investigated VCAC and Human Trafficking violations, and participated in fraud, narcotics, and white-collar investigations. During my training at the FBI Academy in Quantico, Virginia, I received training on a variety of criminal investigative matters relating to conducting these types of investigations.

2. This affidavit is submitted in support of an application for a criminal complaint and arrest warrant charging Joshua Rogers ("ROGERS") (YOB 1995), of Chicago, Illinois, with violation of Title 18, United States Code, Section 2251 (sexual exploitation of children).

3. The statements contained in this affidavit are based on my own personal knowledge and involvement in the investigation and my personal observations; information provided by other FBI Special Agents and analysts; analysis by federal agents/analysts and computer forensic professionals; information obtained from other individual(s); my review of documents and records;

1

and information gained through my training, experience and background and the training and experience of other agents who have worked on child exploitation investigations for years. Because this affidavit is submitted for the limited purpose of establishing probable cause to secure a criminal complaint and arrest warrant, I have not included each and every fact that I, or others, have learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish the requisite probable cause. Where statements of others are set forth in this affidavit, they are set forth in substance and in part.

## PROBABLE CAUSE

### Background of the Investigation

4. On July 19, 2025, the parents of a 14-year-old female child (herein after "Minor A")[1] (YOB: 2011) sent an email to the Brookline, Massachusetts Police Department (hereinafter "BPD"). The parents requested "help regarding our daughter who is talking to a predator online."

5. On July 22, 2025, members of the BPD interviewed Minor A's parents. Minor A's parents stated that they were alerted by a parent of Minor A's friend to concerning messages between Minor A and another person who Minor A thought was a 17-year-old boy named 'John.' In one particular message sent by Minor A to her friend, Minor A stated "I'm literally crying naked in my closet because he said he wouldn't talk to me all week if I don't touch myself on call."

6. During the interview, Minor A's father was able to log into her Snapchat[2] account. A BPD detective observed many videos of Minor A in various stages of undress as well as videos

---

[1] The identity of Minor A and her parents is known to the government but withheld for their privacy.

[2] Snapchat is an American multimedia message application developed by Snap Inc. One of the principal features of Snapchat is that pictures and messages are usually only available for a short time before they become inaccessible to their recipients.

of her masturbating. Minor A's parents consented to a full forensic extraction of Minor A's cell phone.

7. A BPD detective conducted a review of the extraction of Minor A's device. The detective observed messages between Minor A and an individual named "John" on Snapchat and Signal.[3] The detective observed sexual conversations between "John" and Minor A and observed Minor A sharing nude photos and videos of herself.

### FBI Review of Minor A's Device

8. I have reviewed the Snapchat and Signal conversations between "John" (who, as outlined below, I believe to be ROGERS) and Minor A on Minor A's device.

9. ROGERS initially messaged Minor A on July 14, 2025, on Snapchat and instructed her to download Signal. On July 16, 2025, ROGERS messaged Minor A on Snapchat with his Signal username.

10. ROGERS asked Minor A within Snapchat "What grade u in", asked for Minor A's telephone number, and requested her Instagram username. Minor A requested multiple times within Snapchat to see an image of ROGERS, but ROGERS would not send an image of himself. ROGERS stated that he was an intern living in the Boston area.

11. Minor A initially messaged ROGERS on Signal on July 16, 2025. ROGERS asked Minor A "Is ur bday really [Minor A's date of birth]" to which Minor A replied, "Yeah I told u it was."

12. ROGERS asked Minor A for her username and password to her Snapchat account, and her email account. ROGERS attempted to sign into Minor A's Google account, and requested

---

[3] Signal is a free end-to-end encrypted messaging application which offers users the ability to text, call, and video chat through the application. Signal users can create a username which allows the users telephone number to remain hidden from the individuals they are communicating with.

3

that Minor A provide the security code to ROGERS to allow him access to the account. Minor A sent ROGERS a screenshot from a Google security alert she had received, which shows that an "Android device near Chicago, IL, USA" attempted to sign into her account.

13. ROGERS proceeded to pressure Minor A into doing what he said, which often included sending nude videos or images. Minor A requested to meet with ROGERS in person multiple times; however, ROGERS would tell Minor A that she had to do what he said before he would meet her.

14. On July 18, 2025, at approximately 12:00 AM, Minor A placed a call to ROGERS within Signal. At approximately July 18, 2025, at approximately 12:12 AM, Minor A sent ROGERS two videos of herself masturbating:

   a. ███████████████████████████████
   ███████████████████████████████
   ███████████████████

   b. ███████████████████████████████
   ███████████████████████████████
   ███████████████████████████

15. On July 18, 2025, beginning at approximately 5:07 PM, ROGERS stated "Now why dont u rub ur pussy and let me see what they look like wet;)" to Minor A on Signal. After a text exchange regarding what the video would contain, Minor A then sent ROGERS a video at approximately 5:13 PM. This video is approximately 31 seconds long. In this video, the camera is focused on Minor A's exposed genitals while she masturbates. ROGERS replied, "Fuckkk" and "Send a 1-minute video but show ur face and pussy at the same time [smirking emoji][smirking emoji]."

4

16. At approximately 5:20 PM, Minor A sent ROGERS a video that was 1 minute and 3 seconds long. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Minor A can be seen masturbating in a manner consistent with ROGERS' directions. ROGERS responded on Signal, "Fuckkk yes i love my needy princess" and "Play w ur boobs w ur other hand as u rub ur clit faster bby;)." ▬▬▬▬

17. Minor A then sent ROGERS a 43-second video at approximately 5:26 PM. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ROGERS responded, "Finger w 2 fingers super deep and fast for daddy.." and "I want to make u so wet that ur pussy is throbbing."

18. Minor A then sent ROGERS a 52-second video at approximately 5:32 PM. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ROGERS responded, "Faster [Minor A's first name] [smirking emoji] [smirking emoji] show daddy how bad u want his dick inside u" and "Send a 2 minute vid;)." ▬▬▬▬

19. Then at approximately 5:40 PM, Minor A sends ROGERS an additional video of her masturbating that is approximately two minutes long.

20. Later on, July 18, 2025, beginning at approximately 8:53 PM, Minor A again asked ROGERS if he was going to "come get me." ROGERS stated, "I'm only picking u up if u do what I say on vid." Minor A asked ROGERS what he meant by that, and ROGERS stated ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ a back-and-forth exchange, ROGERS then sent Minor A a voice message in which he explained why it was important that he knew she

5

would "do anything." ROGERS informed Minor A that it was important for him to see how far he could push her because if she was unwilling to do something over the phone then she wouldn't do it in person when they were together.

21. Shortly thereafter, Minor A agrees and then placed a call to ROGERS through Signal at approximately 11:00 PM on July 18, 2025. At approximately 11:37 PM, ROGERS texted Minor A on Signal that he loved her, was proud of her, and that she "did so good."

22. On September 10, 2025, Minor A was forensically interviewed by the FBI. During the interview, Minor A confirmed she was the individual masturbating in the videos described above. Minor A also identified her bedroom as the locations all of the above-described videos were taken. Minor A was also shown a copy of the Signal chat transcript, described above, in which ROGERS asked for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

23. Minor A stated that she believed she was speaking with someone named "John" who was 17 years old, and that he lived around Boston. Minor A stated that her full date of birth was listed in her Snapchat profile, and that is how ROGERS knew her age.

**Identification of Joshua Rogers as the User of the Signal and Snapchat Accounts**

24. I have reviewed records provided by Snapchat for the "John" account, which included an associated Gmail address (hereinafter the "Suspect Gmail Address") and various IP addresses used to access the account.

25. One address, 24.12.197.87, resolved to Comcast. Records from Comcast show that the account is subscribed to by Joshua ROGERS at ROGERS' residential address in Chicago, IL. The Comcast subscriber information included an associated phone number ending in -9696.

6

26. Records from AT&T, which services the -9696 number listed in ROGERS' Comcast account, lists the subscriber as a Steve Rogers at a residential address in Salt Lake City, UT. Records from the Utah Department of Motor Vehicles show that ROGERS holds a drivers' license with the same address listed as his residence.

27. Another IP address included in the Snapchat records, 50.149.20.74, resolved to WSP USA, Inc, which I know to be ROGERS' employer.

28. International travel records for ROGERS correspond with international IP address information provided in the Snapchat subpoena response. For example, on June 18, 2025, ROGERS flew from Chicago to Warsaw Chopin Airport in Poland. Between June 19, 2025, and June 20, 2025, ROGERS' Snapchat account was accessed using three separate IP addresses resolving to Poland, Romania, and Bulgaria. Travel records indicate ROGERS flew from Poland to Chicago on June 22, 2025.

29. ROGERS flew to Juan Santa Maria International Airport in Costa Rica on July 3, 2025. According to Snapchat records, ROGERS' account was accessed on July 7, 2025, utilizing an IP address which resolves to Costa Rica. Travel records show ROGERS flew back to the United States on July 7, 2025. Multiple other international travel itineraries located for ROGERS correspond with international Snapchat IP address information.

## **CONCLUSION**

Based on all of the foregoing, I submit there is probable cause to believe that between on or about July 14, 2025, and on or about July 19, 2025, within the District of Massachusetts and elsewhere, Joshua ROGERS did employ, use, persuade, induce, entice, and coerce a minor, "Minor A" (YOB 2011), to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, and attempted to do so, and knew and had reason to know that such visual

7

depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and the visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce, by any means, including by computer, and the visual depiction was actually transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce., in violation of 18 U.S.C. §§ 2251(a) and (e).

Sworn to under the penalties of perjury,

_____
Bryce Montoya
Special Agent
Federal Bureau of Investigation

Sworn before me telephonically pursuant to Fed. R. Crim. P. 4.1(d0(3) this ___ day of December, 2025.

_____
HONORABLE DAVID H. HENNESSY
UNITED STATES MAGISTRATE JUDGE